## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES STEPHENS, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:06-cv-1290 (CFD) |
| | : | |
| JOHN E. POTTER, | : | |
| POSTMASTER GENERAL | : | |
| Defendant. | : | |

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, James Stephens, brought this action against his former employer, John E.

Potter, Postmaster General, United States Postal Service ("Postal Service"), alleging that the

Postal Service discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. § 701

et seq.  For the following reasons, the Postal Service's motion for summary judgment is granted.

### I.       Background[1]

Stephens worked for the Postal Service as a motor vehicle operator ("operator") in the

Processing & Distribution Center in Wallingford, Connecticut.  As an operator he drove nine or

eleven ton trucks as well as tractor trailers from the Wallingford facility to other processing

centers and local post offices.  Each Postal Service operator is assigned a run, which is a set list

of stops that the operator will make throughout the operator's shift.  In order for the Postal

Service to deliver mail in a timely manner, operators must move the mail between the facilities in

a regular and efficient manner.

---

[1]The following facts are taken from the parties' Local Rule 56(a) statements, summary
judgment briefs, and other evidence submitted by the parties.  They are undisputed unless
otherwise indicated.

Stephens' Disability

Stephens suffers from migraines, including the following symptoms:  blurry eyes, numbness, vomiting, diarrhea, light sensitivity, and a reduced ability to process information. Although he did not know when he would get a migraine or how long his migraine would last, Stephens could get between three and fifteen migraines a month and each migraine could last for up to three weeks.  Even when Stephens suspected that he was getting a migraine, he did not call the Postal Service to report that he might be absent.  The Postal Service claims that it often would not know when Stephens would be absent until the day(s) that he was out.

When Stephens was absent, Jeff Robertson, Stephens' supervisor, would either have to pay another driver overtime to cover Stephens' run or have to make other drivers do Stephens' work.  Robertson used an extraordinary amount of overtime to cover Stephens' absences, despite the fact that continuous use of overtime created a budgetary problem.  Because of Stephens' erratic and unpredictable absences, Robertson could not efficiently run his section of the Wallingford facility.

Stephens' Attendance Pre-Last Chance Agreement

In 2003, Stephens used 960 hours of unscheduled leave (136 hours of annual leave, 68 hours of sick leave, 732 hours of leave without pay, and 24 hours of absent without leave), totaling approximately 120 days.  In 2004, from January to March, Stephens used 262 hours of unscheduled leave (80 hours of annual leave, 24 hours of sick leave, and 158 hours of leave without pay), totaling approximately 33 days.  On April 1, 2004, the Postal Service issued a Notice of Removal to Stephens for Unsatisfactory Work Performance, Failure to be Regular in Attendance.  On June 30, 2004, the Postal Service brought Stephens back to work pursuant to a

Last Chance Agreement ("LCA").

### The Last Chance Agreement

The LCA went into effect on June 30, 2004, and specified certain attendance requirements that Stephens had to satisfy during his two year probationary period. Under Section 15 of the LCA, Stephens could not have more than three lates/tardies per year. Under Section 16, he could not have more than five unscheduled absences in each year of the agreement, and could not have more than three unscheduled absences in any six month period. Section 16 also required that Stephens comply with the Labor Relations Manual Section 666.81 Requirement for Attendance which stated that "employees are required to be regular in attendance," as well as Section 511.43 of the Employee and Labor Relations Manual ("ELM"), which stated in relevant part that "employees are expected to maintain their assigned schedule and must make every effort to avoid unscheduled absences." For the purposes of the LCA, an unscheduled absence was any absence not protected by the Family Medical Leave Act ("FMLA") and not requested and approved in advance. Sections 17 and 18 of the LCA required Stephens to provide documentation for any absence in compliance with the ELM and to call to notify management of any unscheduled absences. If Stephens failed to abide by the notification requirements he would be issued an administratively determined and recorded Absent Without Official Leave ("AWOL"). Under LCA Section 19, Stephens could not have any AWOLs during the two year probationary period. Finally, Section 21 provided that violation of any specifications in the LCA would result in termination.

### Stephens' Termination

The Postal Service claims that, in 2005, while Stephens was subject to the LCA, he used

668 hours of unscheduled leave (214 hours of annual leave, 118 hours of sick leave, 328 hours of

leave without pay, and 8 hours of absent without leave), totaling approximately 84 days.

Stephens specifically denies that he was absent without leave for 8 hours because he claims that

he called in his absence and provided medical documentation.  By the end of September 2005,

Stephens exhausted all of his FMLA leave.

On November 18, 2005, Robertson conducted a pre-disciplinary interview with Stephens,

in which he asked Stephens whether he understood his requirement to be in regular attendance.

Stephens answered in the affirmative.  On December 6, 2005, Robertson notified Stephens in

writing of his termination, effective January 5, 2006.  Specifically, the Postal Service claims that

Stephens violated the LCA in the following instances:  (1) on March 21, 2005 he was AWOL for

8 hours; (2) on July 16, 2005 he was Absent from Scheduled Overtime ("AOT") for 8 hours; (3)

from September 19 to October 12, 2005 he used 133.7 hours of Leave Without Pay ("LWOP");

(4) on October 21, 2005 he used 8 hours of Sick Leave; and (5) from October 28 to November

17, 2005 he used 112 hours of LWOP.  Stephens denies the above categorization of his absences

and contends that he called in all of his absences and provided medical documentation.  He

argues that his absences were due to his FMLA condition and disability, and, thus, he contends

that he did not violate the LCA.

On August 18, 2006, Stephens filed the Complaint in the present case.  Prior to filing suit,

Stephens filed charges with the United States Postal Service Equal Employment Opportunity

Commission ("EEOC").  The EEOC dismissed his complaint on June 28, 2006 for failure to

initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be

discriminatory.  Pending before the Court is the Postal Service's motion to dismiss based on the

plaintiff's failure to timely exhaust his administrative remedies and the Postal Service's present

motion for summary judgment.

## II.      Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there

are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of

law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court

must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  Anderson, 477 U.S. at 248.

A plaintiff may not rely on conclusory statements or mere contentions that the evidence in

support of summary judgment is not credible.  Ying Jing Gan v. City of New York, 996 F.2d

522, 532 (2d Cir. 1993); Henry v. Daytop Village, Inc., 42 F.3d 89, 97 (2d Cir. 1997) ("The

plaintiff must adduce evidence consisting of more than mere conclusory or unsubstantiated

statements.").  Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations

or denials" in its complaint to demonstrate the existence of a genuine issue of material fact.  Fed.

R. Civ. P. 56(e).  Therefore, after discovery, if the nonmoving party "has failed to make a

sufficient showing on an essential element of [its] case with respect to which [it] has the burden

of proof," then summary judgment is appropriate.  Celotex, 477 U.S. at 323.

III.   **Discussion**[2]

In analyzing a disability discrimination claim under the Rehabilitation Act, federal courts

apply the burden-shifting analysis established by the Supreme Court in McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802-04 (1973).  The Second Circuit has summarized the analysis

as follows:

> Under McDonnell Douglas, plaintiff bears the initial burden of proving by a
> preponderance of the evidence a prima facie case of discrimination.  The burden of
> production then shifts to defendants, who must offer through the introduction of
> admissible evidence a non-discriminatory reason for their actions that, if believed by
> the trier of fact, would support a finding that unlawful discrimination was not a cause
> of the disputed employment action.  Plaintiff then must show that the proffered
> reason was merely a pretext for discrimination, which may be demonstrated either
> by the presentation of additional evidence showing that the employer's proffered
> explanation is unworthy of credence, or by reliance on the evidence comprising the
> prima facie case, without more.

Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,

198 F.3d 68, 72 (2d Cir. 1999) (internal quotations and citations omitted).

To establish a *prima facie* case of discrimination under the Rehabilitation Act, the

plaintiff must prove that:  (1) he is an "individual with a disability;" (2) he was "otherwise

qualified" for his position; (3) he was denied that position on the basis of his disability; and (4)

the employer receives federal funds.  Banks v. Potter, 253 F. Supp. 2d 335, 344 (D. Conn. 2003).

---

[2]As a preliminary matter, the Postal Service argues that Stephens failed to timely exhaust
his administrative remedies.  "Generally speaking, actions brought under [the Rehabilitation Act]
do not require exhaustion of administrative remedies.  A majority of courts have declined to
require exhaustion of administrative remedies, except in cases seeking relief available under the
[Individuals with Disabilities in Education Act]."  Mr. and Mrs. D. v. Southington Bd. of Educ.,
119 F. Supp. 2d 105, 115 (D. Conn. 2000) (internal citation omitted).  Rather, the exhaustion
requirement is not jurisdictional, and functions more like a statute of limitations, which is subject
to waiver, estoppel and equitable tolling.  See Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000).
The Court declines to rule on the exhaustion issue in light of its finding that the plaintiff has not
made out a *prima facie* case of disability discrimination.

The Postal Service does not dispute the third and fourth prongs of Stephens' *prima facie* case. The Postal Service does dispute whether Stephens is disabled and whether he was otherwise qualified to perform the essential functions of his job.

    A.    <u>Individual with a Disability</u>

To meet the first prong of the *prima facie* case, the plaintiff must prove that he is an "individual with a disability."  The term "individual with a disability" is defined in the Rehabilitation Act as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."  29 U.S.C. § 705(20)(B). Accordingly, a two-pronged inquiry is necessary to determine whether the plaintiff is a disabled person under the Rehabilitation Act.  <u>See</u> <u>Heilweil v. Mount Sinai Hospital</u>, 32 F.3d 718, 722 (2d Cir. 1996).  First, the Court must determine whether the plaintiff has a physical or mental impairment.  <u>Id.</u>  Second, the Court must decide "whether such impairment substantially limits one or more of that person's major life activities."  <u>Id.</u>  According to the regulations promulgated under the Rehabilitation Act, "major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  <u>See</u> 45 C.F.R. § 84.3(j)(2)(ii); <u>see also</u> 28 C.F.R. § 41.31(b)(2)(same).

Stephens alleges that he suffers from a physical disability, a chronic migraine headache condition, which substantially limits one or more of his major life activities, *i.e.* working. Stephens argues that his migraines render him unable to attend work and his medication renders him incapable of maintaining alert, leading to an erratic ability to communicate.  The undisputed record indicates that Stephens was absent approximately 120 days in 2003, 33 days in 2004, and

84 days in 2005. Stephens claims that all of his absences were because of his disability. In light of this, a reasonable juror could find that Stephens suffers from a physical impairment that substantially limits major life activity of working.

### B.   Otherwise Qualified

To meet the second prong of the *prima facie* case, the plaintiff must show that he was otherwise qualified for the position. "An individual is 'otherwise qualified for a job if [he] is able to perform the essential functions of that job, either with or without a reasonable accommodation.' " Ramirez v. N.Y. City Bd. of Educ., 481 F. Supp. 2d 209, 221 (E.D.N.Y. 2007) (quoting Borkowski v. Valley Central Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995)). "In approaching this inquiry [into the essential functions of a job], a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003) (quotations omitted). "The plaintiff, of course, bears the ultimate burden of proving that despite his [disability] he is qualified." Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 515 (2d Cir. 1991).

### 1.   Regular Attendance as an Essential Function of Stephens' Job

Stephens alleges, in a conclusory manner, that he was otherwise qualified for his position. He asserts that he could accomplish his job, as outlined under the LCA, because his absences were addressed under the LCA. The Postal Service argues that Stephens was not otherwise qualified for his position because he could not maintain a regular and predictable level of attendance. "An essential function of any government job is an ability to appear for work . . . and to complete the assigned tasks within a reasonable period of time." Carr v. Reno, 23 F.3d 525,

531 (D.C. Cir. 1994).  "[A]n individual is not qualified for his position if he is unable to come to work."  Robarge v. Potter, No. 01 CV 0417 (SJ), 2002 WL 32061800, at *6 (E.D.N.Y. Mar. 14, 2002) (quoting Mazza v. Bratton, 108 F. Supp. 2d 167, 175 (E.D.N.Y. 2000)); see also Daddazio v. Katherine Gibbs School, Inc., No. 98 CIV. 6861 DC, 1999 WL 228344, at *5 (S.D.N.Y. Apr. 20, 1999) (" '[R]egularly attending work' is an essential function of virtually every job."); Baker v. City of New York, No. 97 CV 5829 (SJ), 1999 WL 33115, at *4 (E.D.N.Y. Jan. 22, 1999) ("Some degree of regular, predictable attendance is fundamental to most jobs.") (quotation omitted); Querry v. Messar, 14 F. Supp. 2d 437, 444 (S.D.N.Y. 1998) ("[Plaintiff] was not 'otherwise qualified' for the position of police officer because she could not perform one of the essential functions of her job -- regularly attending work."); Davis v. Bowes, No. 95 Civ 4765 (LAP), 1997 WL 655935, at *16 (S.D.N.Y. Oct. 20, 1997) ("An employee cannot be considered 'otherwise qualified' when she is unable to report to work at the time required, because she is not able to perform one of the essential functions of her job.").

The Postal Service cites several factually similar cases to illustrate the principle articulated above:  plaintiffs who are unable to attend work regularly may not be otherwise qualified for their position under the Rehabilitation Act.  In Carr v. Reno, for example, the plaintiff's disability frequently caused her to be absent from work for prolonged periods of time without warning.  23 F.3d at 527.  The court explained that "[b]ecause of Ms. Carr's erratic (at best) attendance record and her inability to inform the Office when she could not attend, . . . the U.S. Attorney's Office could not function normally without having others do her work on a daily basis."  Id. at 529.  Thus, the Court of Appeals held that "Ms. Carr's prolonged, frequent, and unpredictable absences render her unqualified for any government job."  Id. at 530-31; see also

Wimbley v. Bolger, 642 F. Supp. 481, 485 (W.D. Tenn. 1986) (holding that the plaintiff, a postal

service employee, was not a qualified handicapped employee because of his failure to come to

work to perform any of his job functions); Gibson v. Henderson, 129 F. Supp. 2d 890, 898

(M.D.N.C. 2001) (holding that the plaintiff, an administrative clerk for the postal service who

operated under strict deadlines, was not otherwise qualified for her position because her job

required regular attendance and she was unable to maintain a regular and predictable level of

attendance).

Stephens cannot make out a *prima facie* case of disability discrimination because he has

not presented a genuine issue of material fact that he could perform the essential functions of his

job, *i.e.* be in regular attendance.  In fact, the undisputed record indicates that Stephens'

attendance was irregular and unpredictable.  Indeed, for similar reasons as to why the Court

determined that Stephens is an individual with a disability because his migraine condition

substantially limited his ability to attend work, the Court also finds that Stephens was not

otherwise qualified for his position at the Postal Service.  Similarly, in Howard v. North Miss.

Medical Ctr., the district court reasoned as follows:

> While Howard can successfully argue that her migraine headaches substantially
> limited all of her major life activities including working, it is, nonetheless, a losing
> argument.  Should the court agree with Howard that being confined to one's bed at
> the onset of a migraine headache is, indeed, substantially limiting, the court would
> be obligated to find that the confinement renders Howard not a qualified individual
> under the Act.  An individual who is disabled must be able to perform the essential
> functions of her job to receive the protection afforded by the ADA.  Attendance at
> work is an essential function of all jobs.

939 F. Supp. 505, 509 (N.D. Miss. 1996).  Stephens admits that his migraines rendered him

unable to attend work, and that he often did not call the Postal Service when he was on the verge

of a migraine.  Thus, he has failed to establish a genuine issue of material fact that he was otherwise qualified for his position.

Further, the Postal Service provided sufficient evidence to prove that attendance is an essential part of an operator's job because of the nature of the position.  Operators cannot make their runs and deliver time-sensitive mail and packages when they are not at work.  The nature of the Postal Service's business requires that the trucks run all day, every day, meaning the drivers must make their runs every day.  The Postal Service must deliver mail and packages in a timely manner, and its business will suffer if it fails to regularly move the mail and packages on time. The Postal Service presented evidence to indicate that Stephens' unscheduled absences disrupted the everyday operation of the Postal Service because when he was absent his runs still had to be completed.  Robertson either had to use an extraordinary amount of overtime to cover Stephens' runs or make other drivers do Stephens' work.

Although Stephens contends that a genuine issue of material fact exists as to whether he violated the LCA, and specifically whether his absences were called in, covered by FMLA, and supported by medical documentation, he has presented no evidence to support this assertion other than his affidavit.  The Postal Service has produced attendance records and an affidavit of Kevin Duplin, the Time and Attendance supervisor, to demonstrate Stephens' violation of the LCA.  In a motion for summary judgment, after the defendant has come forth with evidence, the plaintiff cannot rest on mere allegations, denials, or unsubstantiated statements.  While Stephens claims he has medical documentation for his absences, he has not submitted them to the Court or provided any other evidence to support this claim.

For the foregoing reasons, the Court finds that attendance was an essential function of

Stephens' job and that Stephens was not qualified to perform his job without an accommodation

because of his undisputed and excessive record of absences.

> 2.     Reasonable Accommodation

Stephens argues that he was otherwise qualified for his position *with* his reasonable

accommodation, the LCA.[3]  Stephens claims that the Postal Service implicitly recognized that he

was qualified for his position if he followed the terms of the LCA.  In other words, Stephens

argues that the Postal Service agreed, by signing the LCA, that Stephens could continue working,

and was qualified for his position.  The Postal Service argues that Stephens never requested an

accommodation, that the LCA was not an accommodation, and that the Postal Service could not

make such an accommodation even if he had requested it.

First, Stephens' deposition testimony indicates that he did not request a reasonable

accommodation from Robertson or from the District Reasonable Accommodation Committee,

the committee that processes requests for reasonable accommodations.  In Stephens' affidavit

opposing summary judgment, however, he asserts that he requested a reasonable accommodation

by agreeing to the LCA.[4]  Thus, because Stephens likely did not request an accommodation, the

Postal Service had no obligation to attempt to accommodate him.  See Robarge, 2002 WL

---

[3]In his memorandum in opposition to defendant's motion for summary judgment, Stephens argues that the Postal Service reasonably accommodated him by offering him the LCA. In his Complaint, however, Stephens alleges that the defendant failed to reasonably accommodate his disability.

[4]The Court need not permit Stephens' assertion in his affidavit to defeat the motion for summary judgment because it contradicts his deposition testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.") (citations omitted).

32061800, at *7.  Regardless of whether Stephens requested a reasonable accommodation, no

evidence exists, other than Stephens' affidavit,[5] to indicate that the LCA was a reasonable

accommodation.  In fact, Stephens' deposition testimony and the language of the LCA, itself,

indicate that Stephens was subject to the LCA because of his prior failure to be regular in

attendance.  Therefore, a reasonable juror would find that the LCA was Stephens' "last chance"

to meet the attendance requirements of his position, rather than an accommodation for his

disability.  Even if the Court considers the LCA a reasonable accommodation, Stephens was still

not otherwise qualified for the position because of his undisputed record of absences.  See Lewis

v. Mt. Morris Twp., No. 06-CV-15428, 2008 WL 243951, at *2 n.1 (E.D. Mich. Jan. 28, 2008)

("[E]ven with the accommodation of the L.C.A., [the plaintiff] is not otherwise qualified to

perform his duties as a police officer. . . .  Being sober and ready for work is a basic and

fundamental job duty for any police officer.").

       In addition, even if the Court assumes that Stephens requested an accommodation, such

accommodation to take frequent, unscheduled absences or to come to work when he was able, is

not reasonable.  See Gibson, 129 F. Supp. 2d at 899; see also Farrish v. Carolina Commer. Heat

Treating, Inc., 225 F. Supp. 2d 632, 637 (M.D.N.C. 2002) ("The law does not require employers

to provide the accommodation that the employee be allowed to work only when her illness

permits.").  Further, "the Postal Service is not a welfare agency.  If the agency is to meet its

statutory mandate to provide efficient mail service, it must have employees who can be counted

on to come to work on a regular basis.  Thus, it is obvious why the Postal Service could not

---

[5]Only in paragraph 7 of his affidavit opposing summary judgment did Stephens assert that he made a request for reasonable accommodation by agreeing to the LCA.

simply allow plaintiff to come and go as he pleased."  Wimbley, 642 F. Supp. at 485; see also

Gibson, 129 F. Supp. 2d at 899 (citing 29 C.F.R. § 1613.704(a)) ("[A] Federal Agency is not

required to provide an accommodation that would 'impose an undue hardship' on the agency's

operation.").  Allowing Stephens to work when able would impose an undue hardship on the

Postal Service because it would have to reassign Stephens' runs to other workers or use overtime.

See Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991) (reassigning plaintiff's tasks to co-

workers was not a reasonable accommodation).  Finally, attendance is an essential function of

Stephens' job and "an accommodation that eliminates an essential function of the job is not

reasonable." Id. at 642.

Based on the foregoing, Stephens failed to present sufficient evidence from which a

reasonable juror could conclude that the LCA was a reasonable accommodation or that the Postal

Service could make any reasonable accommodation for Stephens to work when his illness

permitted.  Therefore, the Court finds that Stephens was not otherwise qualified to perform his

job with or without a reasonable accommodation, and the Court grants the Postal Service's

motion for summary judgment because Stephens has failed to prove a *prima facie* case of

disability discrimination.

**IV.**    **Conclusion**

For the reasons set forth above, the defendant's motion for summary judgment [Dkt. #

31] is GRANTED.

SO ORDERED this    29th    day of July 2009, at Hartford, Connecticut.


    **/s/Christopher F. Droney**
    **CHRISTOPHER F. DRONEY**
    **UNITED STATES DISTRICT JUDGE**